## COLVERT ICE CREAM & DAIRY PRODUCTS CO. v. CITRUS PRODUCTS CO.

No. 25874.   Feb. 2, 1937.

Rehearing Denied March 2, 1937.

Suits & Disney, for plaintiff in error.

Thos. B. Losey and Aiden E. Allen, for defendant in error.

BAYLESS, V. C. J.   Citrus Products Company, a corporation, hereafter called plaintiff, filed an action in the district court of Oklahoma county against Colvert Ice Cream & Dairy Products Company, a corporation, for the balance due on an account, which

account was duly itemized and verified. A jury was empaneled, but at the close of the evidence the trial court directed a verdict in favor of plaintiff, and defendant appeals.

The first assignment of error argued relates to the act of overruling the motion to quash. The sheriff's return recited service upon the defendant corporation by serving "George Colvert, he being the Gen. Manager of said corporation, and the president, vice president, secretary, treasurer, or other chief officer not being found in my county." The motion to quash is supported by an affidavit of Colvert, the vice president, that the president of the defendant was in the county at the time of the service of the summons. This is not sufficient to contradict the sheriff's return that he could not find him. The sheriff did not attempt to say that said president was not in the county—he only says he did not find him. The defendant does not say that the sheriff did not search for its president, nor does it attempt to say that its president was present and accessible to the officer, nor does it impugn the bona fides of the officer in serving another and lesser officer. This affidavit is wholly insufficient to support an argument on this issue.

The next assignment relates to the act of the trial court in refusing to quash certain depositions taken by the plaintiff. The notice to take depositions specified they would be taken at "the office of the plaintiff, East Austin Avenue, Cook County, Chicago, Illinois." The certificate of the notary public recited they were taken "at the office of Morley M. Gluskoter in the City of Chicago, in the County of Cook, and State of Illinois, as specified in the notice thereto attached." The envelope in which the depositions were transmitted by mail from the notary public, who took them, to the court clerk bore the legend, printed in the upper left-hand corner, "Morley M. Gluskoter, 105 W. Madison St., Chicago, Ill." Several objections were made to the receipt and publication of these depositions, but the only one urged is that it is obvious from the above quotations the depositions were not taken at the place designated. This is not necessarily so. The address 105 W. Madison is generally understood as being the present return address of the sender. This is not always so. It at most only raises a presumption that the mail came from that address. However, there is nothing in law or fact to prevent Gluskoter having two offices. At the most it raises a doubt. The notice designated the address at which the depositions would be taken as being the office of the plaintiff. Gluskoter certifies that the depositions were taken at

his office, as specified in the notice. There is nothing to prevent plaintiff and Gluskoter occupying the same office. In the view of these facts, we can only say there is some doubt whether the depositions actually were taken at 11 East Austin Avenue, etc. The defendant relies upon Dunham v. Holloway, 2 Okla. 78, 35 P. 949, which holds that the certificate of the notary public must show that the depositions were taken at the place designated in the notice where the other party is not present, otherwise it is the duty of the court to suppress them. The case cited does not seem to have been considered by this court since its publication. We are unwilling to apply it now in all of its severity. To apply it to a situation only doubtful is the reverse of reason or logic, which ought to govern our decisions always. We believe the better and more reasonable and more logical rule would be to suppress such depositions on motion only where it appears that the complaining party was misled and deprived of substantial rights—especially the right to be present. The rule announced in Dunham v. Holloway, supra, is modified accordingly.

The remaining assignments can only be considered in the light of the facts, and we will at this time make a summarized statement of the facts, based upon the evidence introduced by the plaintiff. The defendant did not offer any evidence except certain pleadings in another court proceeding. Plaintiff owned a patented food which its customers froze on a small stick and so'd to the public as and under the trade name of popsicles. Enough of the confection stock, sticks, wrappers, etc., to freeze a certain number of popsicles of the desired flavor were furnished in units, selling for $10 per unit. An agent of plaintiff testified that he sold the first order to defendant, through one of its officers, and was instructed to ship these units to Excell-O Ice Company, at Chickasha, Okla., a branch of defendant corporation where it maintained a brine tank and could freeze the confection. That between the 11th day of May, 1931, and the 17th day of June, 1931, the plaintiff received orders for and shipped to Chickasha, to the account established, $2,102.50 in merchandise, and between the 24th day of June, 1931, and July 1, 1932, plaintiff received from defendant checks and cash payments and credit memos passing between them aggregating $1,191.33, leaving a balance of $911.17, which is sued for. Many exhibits such as orders on plaintiff's forms, telegraphic orders, orders on defendant corporation's forms, were introduced. Excell-O Ice Cream Company

became bankrupt, and plaintiff filed a claim in bankruptcy against it. The trial court declined to admit certified copies of these proceedings in evidence. To these facts we apply the arguments in support of the remaining assignments.

Some of the assignments we will not discuss separately or at length, because our ruling on others disposes of them, to wit: Overruling motion for new trial, overruling demurrer to plaintiff's evidence; and overruling defendant's motion for a directed verdict.

We combine the discussion relating to No. 5:

"The court erred in rendering judgment in favor of the defendant in error, Citrus Products Company, for the reason that the evidence showed that the indebtedness, if any, was to a different corporation, to wit, Popsicle Company"

—and No. 8:

"The court erred in sustaining the motion of defendant in error for an instructed verdict and in directing a verdict for the defendant in error"

—and No. 9:

"The court erred in refusing and ruling out competent and legal evidence on the part of the plaintiff in error."

It is difficult to believe that defendant is serious in its assignment No. 5. There are 16 exhibits in evidence. Two are orders from defendant's office to plaintiff. One is addressed "Citrus Products Co.", and one is addressed "Popsicle Company." Neither was the true corporation designated in full, but it dispels any doubt that defendant knew whom it was dealing with and that by virtue of plaintiff's merchandise a communication addressed to plaintiff under a designation, a popular derivation based upon its business, was effectual. Fourteen communications between agents of plaintiff and plaintiff relating to the account of defendant are in evidence. In 12 of these the term "Citrus Products Co." is used, and in two telegrams from the stenographer of plaintiff's general agent, the term used is "Popsicle Co." Defendant used more than six pages of its brief in endeavoring to establish by argument—not evidence—that Citrus Products Company and Popsicle Company or Popsicle Service, Inc., are entirely separate and distinct entities, and that $530 of the judgment in favor of Citrus Products Company is duplicated by $381.17 allocable to Popsicle. We feel that such contentions are without merit.

We now discuss No. 8. To make out a prima facie case against the defendant—that is, to introduce enough evidence to sustain the verdict of a jury—the plaintiff had to introduce sufficient evidence to establish: (1) That defendant actually began to purchase its merchandise (this would also justify a reliance upon subsequent orders); (2) that it delivered the merchandise ordered, and the sale price thereof; (3) any credits defendant was entitled to have; and (4) the balance due. A reference to our previous statement of the facts established by plaintiff's evidence is sufficient to show that plaintiff met this burden, and a demurrer, admitting the truth of the evidence as well as all reasonable inferences and intendments reasonable to draw therefrom, was properly overruled. The defendant then became duty bound to introduce sufficient evidence to negative the prima facie case of plaintiff or to introduce sufficient evidence to make out a prima facie affirmative defense, under the same rule of law as applied thereon to plaintiff's cause of action.

To meet this burden defendant offered in evidence the certified copies of the bankruptcy proceedings in so far as they related to plaintiff's claim. This offer was rejected. Defendant thereupon rested. By this we understand it did not intend to introduce other evidence. The question then arises: Conceding for argument (although not admitting) that the court erred in rejecting this proffered evidence, what would have been the situation had he admitted it and had such evidence been defendant's only evidence. We are of the opinion that the court would have been justified in directing a verdict for plaintiff.

The cases relied upon by defendant are not sufficiently in point to be controlling. They properly lay down the rule that proof of claims against other parties on the same items is admissible, but that proof of such duplication is not conclusive and is subject to being explained away. It appears in each of those cases except one that the person sued and the third person against whom the claim had been presented were not in any wise related or united by law or fact. In other words, such third person was not an agent, partner, or branch of the corporation. In the excepted case, the rule we apply here was applied. See Gardner v. Bean, 124 Mass. 347. In this case it is not denied that Excell-O Ice Cream Company was a branch of defendant corporation. In addition, the proof of the relations between defendant and Excell-O was so clear and convincing that as a matter of fact the admission of such

evidence would not have raised an issue of fact for the jury. In law the defendant's position in this respect is even less tenable. It is a general rule that a position taken in an earlier action estops the one taking such a position from assuming an inconsistent position in a later action. 21 C. J. 1228, et seq. But there are certain essentials to the establishment of such an estoppel: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions the same; (5) the party claiming estoppel must have been misled, and have changed his position; and (6) it must appear unjust to one party to permit the other to change. See 10 R. C. L. 702, sec. 29, and notes. If defendant's proffered proof had been received, it would have failed entirely to establish essentials 1, 2, 3, 5, and 6. The filing of a claim against an alleged debtor, who was only an agent, does not estop the creditor from thereafter suing the agent's principal, who is in truth the debtor. See Gardner v. Bean, supra. In that case it was held that proof of the two claims was for the jury in the light of other facts. In the case before us there are no other facts which justified submitting to the jury.

What we have said disposes of No. 9. The same is true of No. 10.

It is significant in this case that, although the plaintiff introduced evidence sufficient to establish that defendant corporation ordered some if not all of the merchandise directly, by its own agents, and paid for more than half of it, no responsible officer or agent of the defendant corporation took the stand to give testimony contrary thereto or explain why the defendant was not liable. The entire defense is in reliance on untenable issues of law. We will not strain to find technical legal issues in favor of a litigant who is unwilling to testify to matters which might be of assistance to us in deciding his contention. We realize that the defendant was not bound to offer any evidence until a cause of action, at least prima facie, was made against it, but such a case was made against the defendant herein, and it remained silent to all intents and purposes.

The trial court committed no error in directing judgment against defendant. Judgment affirmed.

OSBORN, C. J., and BUSBY, WELCH, PHELPS, and HURST, JJ., concur. RILEY, CORN, and GIBSON, JJ., absent.